UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**ALBERT BEVERLY,**

**Plaintiff,**

**-v-**                                               **1:13-CV-81 (NAM/RFT)**

**VILLAGE OF MENANDS, CHIEF MICHAEL E.
O'BRIEN, in his professional and individual capacities,
HONORABLE ROBERT A. BECHER, Acting Village
Justice, in his official and individual capacities,
SERGEANT FRANK LACOSSE, in his official and
individual capacities, OFFICER MICHAEL D'AMBRO,
in his official and individual capacities, OFFICER ED
BARNES, in his official and individual capacities,
OFFICER UNKNOWN #1, in his official and individual
capacities, MAYOR MEG GRENIER, Mayor of Menands,
in her official and individual capacities, OFFICER
AARON ST. GELAIS, in his official and individual
capacities,**

**Defendants**

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

APPEARANCES:

Albert Beverly
Plaintiff, pro se

Derek L. Hayden, Esq.
26 Century Hill Drive, Suite 202
Latham, New York 12110
Attorney for Defendant Village of Menands

Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C.
Alaina K. Laferriere, Esq., of counsel
20 Corporate Woods Boulevard
Albany, New York 12211
Attorney for Defendants Chief Michael O'Brien, Hon. Robert A.
Becher, Sgt. Frank Lacosse, Officer Michael D'ambro, Officer Ed
Barnes, Mayor Meg Grenier and Officer Aaron St. Gelais

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

Defendant Village of Menands ("Village") moves (Dkt. No. 11) to dismiss this *pro se* civil rights action on the ground of failure to state a claim upon which relief may be granted.  The remaining defendants move (Dkt. No. 13) for the same relief.  As set forth below, the motions are granted in part and denied in part.

**COMPLAINT**

In his *pro se* complaint, plaintiff sets forth the following general factual allegations:

14. Plaintiff Albert Beverly ("Beverly"), on or about November 29, 2012, was driving East on Route 378 in the Village of Menands, State of New York, at about 3:15 p.m. when the vehicle he was driving ran out of fuel at the very end of the off-ramp.

15. Beverly called a friend to bring him some fuel in a gas can and proceeded to wait about 10 minutes for that person to arrive.

16. At the same time, Beverly called the N.Y.S. Police 911 to inform them of the situation and asked if the Highway Emergency Local Patrol (HELP) was available to assist.

17. Upon Beverly's friend arriving and providing fuel, upon trying to start the vehicle it was realized that the vehicle would need to be jump started in order to get it to be mobile, said friend was without the necessary equipment to render such service and departed.

18. At about 3:30 p.m. on said date, Defendant Barnes arrived on scene at the same time as Car #01 from the Troy, New York Police Department; the Troy officer departed and Barnes remained.

19. At about 3:40 p.m., Barnes rudely asked how much longer before someone arrived and again I called the N.Y.S. Police 911.

20. At about 3:45 p.m., Barnes again rudely asked how much longer before someone arrived  and stated that if they didn't hurry, he would have the vehicle towed.

21. At about 3:50 p.m., the H.E.L.P. truck arrived and was turned away by Barnes and instead a Dawson's tow truck arrived and the driver stated he was there to tow my vehicle.

22 . When Beverly tried to ask why his vehicle was to be towed, the officer became irate stating expletives and became highly agitated, banging on the vehicles drivers window, demanding that I exit the vehicle, and even going so far as to draw his Taser.

23. Upon exiting the vehicle, Beverly was arrested and imprisoned and strip-searched.

24. Sometime after arrival at the Menands Police Department, defendants Lacosse, St Gelais, Barnes, Unknown # 1 and D'ambro entered the holding cell and dragged Beverly into a room in an attempt to get fingerprints and photos from him, which did not require them to place Beverly in a illegal choke hold, unlawfully punch & slap, bend fingers, knee strike, and even doing so while administering Taser strikes for more than 4 minutes.

25. On three separate occasions, the defendants did take Beverly into other areas of the police station and continue to apply the illegal choke hold, unlawfully punch & slap, bend fingers, knee strike, and administer additional Taser strikes.

26. As defendants Barnes and St. Gelais transported Beverly to the Albany County Correctional Facility, they stopped the vehicle on Rt. 378 W by the Albany Rural Cemetery, called D'ambro to join them and proceeded to apply the illegal choke hold, unlawfully punch & slap, bend fingers, knee strike, and administer additional Taser strikes.

27 . Upon arrival at the Albany County Correctional Facility, Beverly was received with multiple injuries which required medical attention from jail medical staff.

28. On 30 November 2012, at 2 p.m., Beverly was released on bail from the Albany County Correctional Facility and sought treatment at a local E.R. for further medical treatment.

The complaint sets forth 15 causes of action.[1]

---

[1] Throughout the Memorandum-Decision and Order, the Court quotes directly from the complaint without noting or correcting errors.

In Count 1, based on 42 U.S.C. § 1983 ("section 1983"), plaintiff claims he was subjected to false arrest, false imprisonment, unreasonable search and seizure, and conspiracy, in violation of his rights to due process and equal protection and his protection against unreasonable search and seizure.  Plaintiff adds the factual allegations that Officer Barnes stated he was arresting plaintiff for obstructing governmental administration; that Officer Barnes, assisted by Officer D'Ambro, handcuffed plaintiff, placed him in the patrol car, and drove him to the police station; that they uncuffed plaintiff and placed him in a holding cell; that someone asked plaintiff if he knew a person named Christopher Parker, "a police officer who Beverly had a conflict with while this person was off duty"; that Officer Barnes then "Mirandized" plaintiff; that at no time did plaintiff "attempt to resist arrest, obstruct a governmental function or offer violence to them"; that Officer Barnes signed a complaint charging plaintiff with two counts of obstructing governmental administration and one count of disorderly conduct; and that thereafter plaintiff was taken in handcuffs to Menands Village Court and subjected to additional assaults.

Count 2, based on section 1983, alleges: "As a result of their concerted unlawful and malicious assault, detention and confinement of Beverly, Defendants Officer Bill and Officer Ed [Barnes] deprived Beverly of both his right to his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments[.]"[2]

In Count 3, also a section 1983 claim, plaintiff alleges that defendants caused him to be subjected to a strip search in the county jail, including a body cavity search, without justification,

---

[2] No defendant has the first name of "Bill" or "William"; presumably plaintiff's reference to "Officer Bill" is an error.

in violation of his rights under the Fourth, Fifth, Ninth, and Fourteenth Amendments.

Count 4 is a section 1983 claim alleging that defendants conspired with Christopher Parker to deprive plaintiff of his liberty without due process of law and of his right to equal protection in violation of the Fifth and Fourteenth Amendments.

Count 5 is headed: "Violations of 42 U.S.C. § 1983; Refusing or Neglecting to Prevent." Plaintiff claims that defendants police officers "were acting under the direction and control of Defendants Grenier and O'Brien, and Defendant Village of Menands"; that, acting under official and unofficial policy or custom, Sgt. Lacosse and Officers Barnes, D'Ambro, and St. Gelais, and the Village "failed to instruct, supervise, control and discipline on a continuing basis" defendant police officers in their duties to refrain from harassing, arresting, imprisoning, or prosecuting a citizen"; that Mayor Meg Grenier, Chief Michael E. O'Brien, and the Village knew or should have known "that the wrongs conspired to be done ... were about to be committed"; and that Mayor Grenier, Chief O'Brien, and the Village had the power to prevent the wrongs but failed to do so.

The remaining counts are state law claims. Count 6 sounds in malicious prosecution. Plaintiff states that Officer Barnes played an active part in initiating criminal proceedings by signing the criminal complaint against plaintiff; that the charges were not based on probable cause; that Sgt. Lacosse and Officers D'Ambro and St. Gelais conspired with Officer Barnes and "played an active part in the initiation of the criminal proceedings as Defendant Barnes' partners by arresting, assaulting and causing the false imprisonment of Beverly"; and that Chief O'Brien, Sgt. Lacosse and Officer D'ambro had a duty to ascertain whether there was probable cause for a prosecution.

Count 7, "Malicious Abuse of Process," claims that defendants maliciously used a legal process to accomplish some ulterior purpose; that Sgt. Lacosse and Officers Barnes, D'Ambro, and St. Gelais knew or should have known that the complaint was groundless; that "Officer Bill and Officer Ed [Barnes]" used the legal process with the ulterior purpose of assaulting plaintiff and seeking revenge on behalf of Christopher Parker; and that the Village, Mayor Grenier, and Chief O'Brien are liable under the doctrine of *respondeat superior*.

Count 8 claims violations of New York Civil Rights Act in threatening plaintiff's liberty, assaulting him, and intimidating and coercing him "into not coming back to the Village[.]"

In Count 9, plaintiff alleges false arrest and imprisonment against Officers Barnes and D'ambro, and vicarious liability on the part of the Village and Chief O'Brien.

Count 10 claims that defendants assaulted plaintiff and that the Village and Mayor Grenier are vicariously liable.

Count 11 asserts that Sgt. Lacosse and Officers Barnes, D'Ambro, and St. Gelais are liable for battery, based on allegations that they assaulted plaintiff and caused him to be subjected to a strip search by an unknown corrections officer at the county jail.   Plaintiff alleges that the Village and Mayor Grenier are vicariously liable.

Count 12 alleges that all defendants conspired to assault, arrest, detain, and prosecute plaintiff without probable cause; that defendants Judge Robert A. Becher and Chief O'Brien knew or should have known that Officer Barnes intentionally misrepresented facts about the incident; and that the Village and Mayor Grenier are vicariously liable.

Count 13 is for intentional infliction of emotional distress, alleging that defendants' conduct was extreme and outrageous, and that the Village and Mayor Grenier are vicariously

liable.

Count 14, headed: "Reserved for Negligence (until 6 months after presentment)," claims that the Village and Chief O'Brien breached their duty to train and supervise officers; that Chief O'Brien and Sgt. Lacosse breached their duty to act according to the standard of ordinary care of a police officer; and that the Village and Chief O'Brien are vicariously liable.

Count 15 is headed: "Reserved for Negligent Infliction of Emotional Distress (until 6 months after presentment)." Plaintiff asserts the claim against all defendants and adds that the Village and every defendant are also vicariously liable.

## DISMISSAL, GENERALLY

To survive a dismissal motion, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See ATSI*, 493 F.3d at 98. A complaint should be "especially liberally construed when it is submitted *pro se* and alleges civil rights violations." *See Jacobs v. Mostow*, 271 Fed.Appx. 85, 87 (2d Cir. 2008) (citing *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006)). The submissions of a *pro se* litigant should be interpreted "to raise the strongest arguments that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citations omitted).

The Court "should not dismiss [a pro se complaint] without granting leave to amend at

least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Leave to amend is not, however, necessary when amendment would be futile, as when the complaint, even read liberally, does not "suggest[] that the plaintiff has a claim that [he] has inadequately or inartfully pleaded and that [he] should therefore be given a chance to reframe."  *Id.*

### VILLAGE'S MOTION TO DISMISS

In moving for dismissal (Dkt. No. 11), the Village argues that plaintiff's federal causes of action must be dismissed for failure to plead a basis for municipal liability.  It further contends that plaintiff's state law causes of action must be dismissed for failure to plead compliance with the notice of claim requirement of the New York General Municipal Law ("GML").

#### *Section 1983*

Title 42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]"  The Supreme Court explains that "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  Section 1983 does not itself create enforceable rights; rather, it  provides "a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 394 (citation omitted).  "Recovery under 42 U.S.C. § 1983 is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or federal statutory right and, second, that such denial was effected under color of state law."  *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985).

Under the standards articulated in *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690-91 (1978), a municipality can be liable on a section 1983 claim "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "Absent such a custom, policy, or usage, a municipality cannot be held liable [under section 1983] on a *respondeat superior* basis for the tort of its employee." *Id.* There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff may establish this causal link by showing that a defendant was deliberately indifferent to the training, supervision, or discipline of its employees. *See Amnesty America v. Town of West Hartford*, 361 F.3d 113, 127 (2d Cir. 2004). Ordinarily, "absent more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, a policy could not ... be inferred from a single incident of illegality such as a first arrest without probable cause or with excessive use of force." *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980). In rare circumstances, however, "a single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference or 'gross negligence' on the part of officials in charge." *Id.*

In the instant case, the complaint pleads municipal liability as follows:

> 44. Defendants Village of Menands, O'Brien, and the Menands Police Department negligently trained Defendants Lacosse, St. Gelais, Barnes, Unknown #1, and D'ambro.
> ***
> 59. Acting under color of law and pursuant to both official policy or custom and unofficial policy or custom, Barnes, Lacosse, St. Gelais, Unknown # 1, and D'ambro, and the Village of Menands knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a

continuing basis Defendant police officers in their duties to refrain from:

> (a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,
>
> (b) unlawfully and maliciously arresting, imprisoning and prosecuting a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,
>
> (c) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the Commonwealth of New York; and
>
> (d) otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

60. Defendants Grenier and O'Brien and the Village of Menands had knowledge or, had they diligently exercised that duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants Grenier and O'Brien and the Village of Menands had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

61. Defendants Grenier and O'Brien and the Village of Menands directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant police officers heretofore described.

These assertions, read liberally in combination with the factual allegations of the complaint, sufficiently claim a series of unusually egregious beatings administered by a group of municipal employees under circumstances that warrant an inference that their conduct was attributable to inadequate training or supervision amounting to deliberate indifference.[3] *See Turpin*, 619 F.2d at 202; *Owens v. Haas*, 601 F.2d 1242, 1246-47 (2d Cir. 1979). Plaintiff avers that after he was arrested without justification, he was brought to the police station; that the arresting officer and three others, including a sergeant, beat him at three different locations in the

---

[3] The deliberate indifference standard "does not hold the county at fault for the actions of its employees on a respondeat superior basis; it holds the county liable for its own actions which result in deprivation of constitutional rights." *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir. 1979).

police station; that, while transporting plaintiff to the county jail, two of the officers stopped the police vehicle at a cemetery, where a third joined them and beat plaintiff again; and that thereafter, plaintiff was taken to the Village of Menands Court and subjected to another beating in the hallway.  Plaintiff further claims that the beatings included "illegal choke hold, unlawfully punch & slap, bend  fingers, knee strike, and even doing so while administering Taser strikes for more than 4 minutes."  Plaintiff's allegations, accepted as true, support an inference of a municipal policy of failure to train or supervise sufficient to withstand a Rule 12(b)(6) motion.

*State law*

With respect to the state law claims against the Village, "federal courts entertaining state-law claims against ... municipalities are obligated to apply the [state] notice-of-claim provision" *Felder v. Casey*, 487 U.S. 131, 151 (1988); *accord Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999).  Under New York law, a timely-served notice of claim is a statutory precondition to filing a state-law tort action against a municipality.  *See* GML §§ 50-e, 50-i.  The applicable notice of claim requirement provides that no action shall be maintained against a municipality for personal injury or damage to property alleged to have been sustained by reason of the negligence or wrongful act of such municipality, unless:

> a notice of claim shall have been made and served upon the [municipality] ... in compliance with section fifty-e of this article, [and] (b) it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice ... and that adjustment or payment thereof has been neglected or refused[.]

GML § 50-i(1)(a).  Plaintiff's complaint does not plead that thirty days have elapsed since service of a notice of claim, nor is there any evidence that in fact he served a notice of claim on the Village.  Therefore, plaintiff's state law claims against the Village must be dismissed.

## MOTION TO DISMISS BY REMAINING DEFENDANTS

**Official capacity claims under 42 U.S.C. § 1983; Massachusetts law claims**

All other defendants move (Dkt. No. 13) to dismiss the claims against them.  Plaintiff's section 1983 official capacity claims against Judge Becher, Mayor Grenier, Chief O'Brien, Sgt. Frank Lacosse, and Officers Barnes, D'Ambro, and St. Gelais are in effect claims against the Village, and are dismissed as duplicative.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66, 167 n.14 (1985).

Massachusetts law, cited in the complaint, does not apply in this action.  Therefore, any claims in the complaint that may be supported by Massachusetts law but not by federal or New York State law are dismissed.

**Hon. Robert A. Becher**

Defendant Judge Becher, Acting Village Justice, is entitled to absolute judicial immunity. The complaint's sole statement regarding Judge Becher, found in Count 12, "Conspiracy," states that he "knew or should have known that Barnes had intentionally misrepresented facts about the incident."  The only rational reading of this statement in the context of the complaint is that Judge Becher participated in the alleged conspiracy by presiding over the proceedings against plaintiff stemming from the allegedly baseless charges lodged by Officer Barnes.  Nothing in the complaint suggests that Judge Becher played any other part in the events alleged.  Presiding over a judicial proceeding is a quintessentially "judicial" action.  Under both federal and state law, Judge Becher is shielded from suit by the doctrine of absolute immunity.  *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Mosher-Simons v. County of Allegany*, 99 N.Y.2d 214, 219 (2002).  All claims against Judge Becher are dismissed with prejudice.

**Negligence and negligent infliction of emotional distress**

Count 14 is headed: "Reserved for Negligence (until 6 months after presentment)." It asserts that the Village and Chief O'Brien breached their duty to train and supervise officers; that Chief O'Brien and Sgt. Lacosse breached their duty to act according to the standard of ordinary care of a police officer; and that the Village and Chief O'Brien are vicariously liable. Count 15 is headed: "Reserved for Negligent Infliction of Emotional Distress (until 6 months after presentment)." Plaintiff asserts Count 15 against all defendants and adds that the Village and every defendant are also vicariously liable. The causes of action appear to be framed in terms of Massachusetts' notice of claim statute, which provides that "a civil action shall not be instituted against a public employer on a claim for damages" unless the claimant "shall have first presented his claim in writing to the executive officer of such public employer... and such claim shall have been finally denied by such executive officer" or the officer shall have failed to act upon the claim "within six months after the date upon which it is presented[.]" Mass. Gen. Law 258 § 4. This statute is inapplicable to plaintiff's New York common-law negligence claims. Therefore, the Court construes Count 14 as a negligence claim against all defendants, and Count 15 as a negligent infliction of emotional distress claim against all defendants.

_Section 1983_

Negligence does not support a section 1983 claim. *See generally Medeiros v. O'Connell*, 150 F.3d 164, 170 (2d Cir. 1998). Moreover, any claim that Chief O'Brien and Sgt. Lacosse were "grossly negligent" in carrying out their supervisory duties would be duplicative of the supervisory liability claims discussed above. Counts 14 and 15 do not state a section 1983 claim.

_State law_

-13-

Insofar as plaintiff asserts negligence claims against the Village, they are dismissed for plaintiff's failure to allege compliance with New York State's notice of claim requirement. *See* GML § 50-i(1)(a). Likewise, any negligence claim against the individual defendants is also subject to the notice of claim requirement, because the Village would be liable to indemnify them; therefore, plaintiff's failure to allege compliance warrants dismissal. *See, e.g., Brenner*, 492 F.Supp.2d at 405 (notice of claim requirement applies to plaintiff's claims against police officers for ordinary acts of negligence).

Accordingly, all 42 U.S.C. § 1983 claims in Counts 14 and 15 are dismissed with prejudice. All state law claims in Counts 14 and 15 are dismissed without prejudice for failure to plead filing of a notice of claim.

**Sgt. Lacosse and Officers Barnes, D'Ambro, and St. Gelais**

<u>*Section 1983 - Officer Barnes*</u>

With respect to Officer Ed Barnes, the complaint contains factual allegations that on November 29, 2012, Officer Barnes wrongfully arrested plaintiff on Route 378; participated with Sgt. Lacosse and Officers D'ambro and St. Gelais in assaulting plaintiff at the police station; detained plaintiff at the police station; participated with Officers D'ambro and St. Gelais in beating plaintiff in the Albany Rural Cemetary; and swore out a false criminal complaint against plaintiff. Read liberally, these allegations state claims that, under color of state law, Officer Barnes seized and detained plaintiff without justification, assaulted him, failed to intervene in the misconduct of other officers, and maliciously initiated and supported false criminal charges against him. Thus, the complaint sets forth the following section 1983 claims based on Officer Barnes' alleged infringement of plaintiff's Fourth Amendment protection against unreasonable

seizure: intentional confinement of plaintiff without his consent and without justification,[4] *see Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); use of excessive force against plaintiff,[5] *see Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004); failure to intervene in the misconduct of other officers,[6] *see Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); and the initiation and pursuit of criminal prosecution without probable cause.[7]  *See Murphy v. Lynn*, 118 F.3d 938, 944

---

[4] A section 1983 claim for false arrest and detention is based on the Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause.  *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  The existence of probable cause to arrest constitutes justification and is a complete defense to such a claim.  *Id.*

[5] A law enforcement officer's use of force is excessive under the Fourth Amendment when his actions were "objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

[6] The Second Circuit writes:

> It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.  An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official.  In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.

*Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted).

[7] Plaintiff's claim that the criminal prosecution was initiated and pursued against him without probable cause states a Fourth Amendment claim, not a claim under the Due Process clause.  *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997).  As the Second Circuit explains:

> In *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)..., the Supreme Court ruled that a plaintiff who has alleged that a criminal prosecution was initiated against him without probable cause has not stated a § 1983 claim for violation of his right to substantive due process.  Rather, in order to prevail on such a claim under § 1983, the plaintiff must show a violation of his rights under the Fourth Amendment.  *See* 510 U.S. at 274-75, 114 S.Ct. at 813–14 (plurality opinion); *id*. at 281, 114 S.Ct. at 816–17 (Kennedy, J., concurring in the judgment); *id*. at 288–89, 114 S.Ct. at 820–21 (Souter, J., concurring in the judgment). See also *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.1995) (in order to succeed on a § 1983 claim for malicious prosecution, plaintiff must show conduct that was tortious under state law and that injury was "caused by the deprivation of liberty guaranteed by the Fourth Amendment"), *cert. denied*, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996).

-15-

(2d Cir. 1997) ("[A] plaintiff who has alleged that a criminal prosecution was initiated against him without probable cause has not stated a § 1983 claim for violation of his right to substantive due process. Rather, in order to prevail on such a claim under § 1983, the plaintiff must show a violation of his rights under the Fourth Amendment.").  As for the Fourth Amendment claim based on the alleged strip search to which plaintiff was subjected after being transferred to the custody of the county jail, it is questionable whether Officer Barnes' actions were a proximate cause of the actions of the county; the Court cannot, however, determine this issue on this motion. *See generally discussion in Zahrey v. Coffey,* 221 F.3d 342, 351-52 (2d Cir. 2000).

Plaintiff's allegations do not support a plausible claim under the Equal Protection Clause, because plaintiff does not allege discrimination based on membership in a protected class, nor does he aver that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

### Section 1983 - Sgt. Lacosse and Officers D'ambro and St. Gelais

Read liberally, the complaint alleges that Sgt. Lacosse was present at the police station and participated in the unjustified detention and assaults against plaintiff, failed to supervise the officers, and failed to intervene to protect plaintiff's rights, in violation of plaintiff's Fourth Amendment rights.  The complaint alleges against Officers D'ambro and St. Gelais that they participated in the unjustified detention and assaults against plaintiff at the police station, participated with Officer Barnes in the beating at the cemetery, and failed to intervene to protect

---

*Id.*

-16-

plaintiff's rights, in violation of plaintiff's Fourth Amendment rights.[8]  Although it is inconsistent, the complaint also appears to allege that Officer D'ambro participated in the initial arrest of plaintiff on Route 378.  It is also unclear whether Sgt. Lacosse or Officers D'ambro or St. Gelais directly participated in the alleged criminal prosecution of plaintiff; however, as discussed below, the complaint alleges a conspiracy among Sgt. Lacosse and the three officers sufficient to withstand Rule 12(b)(6) dismissal.  It is true that plaintiff does not allege the involvement of all of these officers in each incident; however, as seen below, the Court finds that plaintiff has adequately alleged that the officers conspired to deprive plaintiff of his rights.  Plaintiff's allegations adequately plead plausible claims that Sgt. Lacosse and Officers D'ambro and St. Gelais violated his Fourth Amendment rights.  As discussed with respect to Officer Barnes, plaintiff does not plead plausible claims under the Due Process Clause or Equal Protection Clause.

### Sections 1983 and 1985 - conspiracy

The Court next considers plaintiff's conspiracy claims.  The elements of a section 1983 conspiracy are: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  A conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citations and quotation marks omitted).

---

[8] As with Officer Barnes, the Court cannot determine on this record whether the the alleged strip search of plaintiff at the county jail was proximately caused by the actions of Sgt. Frank Lacosse, Officer Michael D'ambro, and Officer Aaron St. Gelais.

Plaintiff alleges that four police officers, including a sergeant, participated in the beatings, that the beatings occurred at three different locations in the police station, and that while transporting plaintiff to the county jail, Officers Barnes and St. Gelais stopped the vehicle at the cemetery and telephoned Officer D'ambro, who joined them and further beat plaintiff.  Moreover, plaintiff alleges that, at the police station, when he was placed in a holding cell, he "was asked if he knew a person named Christopher Parker, a police officer who Beverly had a conflict with while this person was off duty"; that, while he was assaulted at the police department, "the defendants repeatedly stated Christopher Parker by name and reference"; and that defendants' purpose was to deprive plaintiff of his rights, "to aid and abet Christopher Parker," and to get "revenge in the name of Christopher Parker."  Read liberally, plaintiff's complaint is sufficient to state a plausible claim that Sgt. Lacosse and Officers Barnes, D'ambro, and St. Gelais agreed to act in concert to inflict unconstitutional injury upon plaintiff, and took overt acts in furtherance of that goal causing injury to plaintiff.[9]  The section 1983 conspiracy claims against Sgt. Lacosse and Officers Barnes, D'ambro, and St. Gelais in Counts 1 and 4 withstand Rule 12(b)(6) dismissal.

Plaintiff also appears to assert a conspiracy claim based on 42 U.S.C. § 1985(3).  A section 1985(3) conspiracy requires a showing that the conspiracy was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."  *Thomas*, 165 F.3d at 146 (citations and quotation marks omitted).  There is no allegation suggesting that defendants here acted with class-based discriminatory animus.  The complaint

---

[9] Moreover, although defendants did not raise the issue, plaintiff's *pro se* allegations to the effect that defendants acted in their personal interest to avenge a conflict which occurred between plaintiff and Christopher Parker while Parker was off duty are sufficient to avoid dismissal based on the intracorporate conspiracy doctrine, even assuming that the doctrine applies to actions under 42 U.S.C. § 1983.  *See generally Chillemi v. Town of Southampton*, 943 F.Supp.2d 365, 381 (E.D.N.Y. 2013); *Lewis v. Havernack*, 2013 WL 1294606, at *13 (N.D.N.Y.  Mar. 28, 2013).

does not support a section 1985(3) conspiracy, and this claim is dismissed.

*State law*

Plaintiff's allegations, including the allegation that the criminal proceeding terminated in his favor when all charges were dismissed, are sufficient to state claims for malicious prosecution (Count 6), abuse of process (Count 7), false arrest and imprisonment (Count 9), assault (Count 10), and battery (Count 11). At the pleading stage, plaintiff's allegations of intentional infliction of emotional distress (Count 13) are also sufficient. Count 8, citing to New York's Civil Rights Act, fails to state a cognizable claim.

Defendants assert that plaintiff's failure to serve a timely notice of claim bars him from pursuing his state law claims. As relevant to plaintiff's claims against Sgt. Frank Lacosse and Officers Barnes, D'ambro, and St. Gelais, New York law provides that a timely-served notice of claim is a statutory precondition to filing a tort action against a municipal employee in circumstances where the municipality is obligated to indemnify its employees. *See* GML § 50-e, 50-i; 50-k(3). Under GML § 50-k(3), the indemnification obligation arises where "the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged damages were sustained; the duty to indemnify and save harmless prescribed by this subdivision shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee." Plaintiff's claims against Sgt. Lacosse and Officers Barnes, D'ambro, and St. Gelais include claims of intentional wrongdoing to which the notice of claim requirement does not apply. Dismissal of Counts 6, 7, 9, 10, 11, and 13 on this ground is not warranted at this stage of the action.

In addition to the state law tort claims, plaintiff asserts a state law conspiracy claim in Count 12.  There is no independent state-law tort of conspiracy in New York.  *See  Stokes v. Lusker*, 425 Fed.Appx. 18, 22 (2d Cir. 2011); *RA Global Servs., Inc. v. Avicenna Overseas Corp.*, 817 F.Supp.2d 274, 288-89 (S.D.N.Y. 2011).  Where, however, the complaint pleads an underlying, actionable tort, "plaintiff may plead the existence of a conspiracy ... to demonstrate that each defendant's conduct was part of a common scheme."  *World Wrestling Federation Entm't v. Bozell*, 142 F.Supp.2d 514, 532 (S.D.N.Y. 2001) (citation and quotation marks omitted).  In addition to the primary tort, a plaintiff must plead the four essential elements of a conspiracy claim: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."  *Id.*  As noted above, the complaint adequately pleads a plausible claim that Sgt. Lacosse and Officers Barnes, D'ambro, and St. Gelais conspired to subject plaintiff to malicious prosecution, abuse of process, false arrest and imprisonment, assault, battery, and intentional infliction of emotional distress.[10]  Therefore, Count 12 is dismissed, and Counts 6, 7, 9, 10, 11, and 13 are construed to include the allegation that the alleged torts were committed as part of a conspiracy

### Sgt. Lacosse and Officers Barnes, D'Ambro, and St. Gelais - conclusion

In sum, the case may proceed on the following 42 U.S.C. § 1983 claims against Sgt. Lacosse and Officers Barnes, D'Ambro, and St. Gelais: intentional arrest and confinement of plaintiff without his consent and without justification, use of excessive force, and the initiation and pursuit of criminal prosecution without probable cause (Counts 1 and 2); causing plaintiff to

---

[10] The complaint does not contain factual allegations supporting inclusion of Judge Becher, Mayor Grenier, or Chief O'Brien in the conspiracy.

be subjected to an unreasonable strip search at the county jail (Count 3); section 1983 conspiracy (Counts 1 and 4); and failure to intervene in the misconduct of other officers (Count 5). The case may also proceed against Sgt. Lacosse and Officers Barnes, D'Ambro, and St. Gelais on the following state law claims, which are construed to include the allegation that the underlying torts were committed as part of a conspiracy: malicious prosecution (Count 6), abuse of process (Count 7), false arrest and imprisonment (Count 9), assault (Count 10), battery (Count 11), and intentional infliction of emotional distress (Count 13).

**Mayor Meg Grenier**

*Section 1983*

Next, the Court considers plaintiff's section 1983 claims against Mayor Meg Grenier. In Count 5, plaintiff alleges that defendants police officers were acting under the direction and control of Mayor Grenier during the incidents in issue. Plaintiff further alleges:

> 60. Defendant[] Grenier ... had knowledge or, had [she] diligently exercised [her] duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendant[] Grenier ... had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.
> 61. Defendant[] Grenier ... directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant police officers heretofore described.

As noted above, the complaint's allegations support an inference of a municipal policy of failure to train or supervise under *Turpin*, 619 F.2d at 202. The Court cannot determine whether there is any basis upon which such a policy may be attributable to Mayor Grenier. In moving to dismiss the claims against Mayor Grenier, defendants do not provide information or argument regarding the mayor's supervisory responsibilities over the Village police under local law. *See generally*

N.Y. Village Law, § 4-400(1)(b) ("It shall be the responsibility of the mayor ... to provide for the enforcement of all laws, local laws, rules and regulations and to cause all violations thereof to be prosecuted").  Nor do they provide the Court with information or adequate argument regarding whether Mayor Grenier is entitled to absolute or qualified immunity in this action.[11]  Dismissal of the section 1983 claims against Mayor Grenier is denied.

### State law

Many of plaintiff's state law claims include the assertion that Mayor Grenier is liable under the doctrine of *respondeat superior*.  Under New York State law, a municipality or municipal official may be vicariously liable under a *respondeat superior* theory for the wrongful conduct of a police officer who was acting "in furtherance of the duties he owes to his employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities."  *Lundberg v. State of New York*, 25 N.Y.2d 467, 470 (1969).  On this record, the Court cannot evaluate the degree of control, if any, exercised by the mayor over Village police under local law.  Plaintiff's state law claims against Mayor Grenier must, however, be dismissed on the ground that plaintiff does not allege that he served a notice of claim as required by GML 50-e and 50-i.  *See Rattner v. Netburn*, 733 F.Supp. 162, 166 (S.D.N.Y. 1988), *rev'd on other grounds*, 930 F.2d 204, 208 (2d Cir. 1991).

**Police Chief Michael O'Brien**

### Section 1983

With respect to Chief Michael O'Brien, the complaint alleges that defendant police

---

[11] A mayor is an executive, not a legislative, official.  Defendants' citation to case law concerning legislative immunity is inapposite.  For executive officials, "qualified immunity represents the norm."  *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).

officers were acting under Chief O'Brien's direction and control during the alleged incidents; that he failed to instruct, supervise, control, and discipline them; that he knew or should have known that the alleged incidents were about to occur; and that he approved or ratified them after they occurred. There is no specific factual allegation supporting a plausible claim that Chief O'Brien was personally involved in the alleged arrest, assaults, detention, prosecution, or conspiracy. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). There are, however, allegations supporting a plausible claim that Chief O'Brien failed to exercise appropriate supervisory control. To allege supervisory liability under section 1983, a plaintiff must allege facts showing "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). As noted above, the complaint sets forth allegations sufficient to support an inference of a municipal policy of failure to train or supervise under *Turpin*, 619 F.2d at 202. Dismissal of the section 1983 claims against Chief O'Brien is denied.

*State law*

Plaintiff's state law claims against Chief O'Brien must be dismissed on the ground that plaintiff does not allege that he served a notice of claim as required by GML 50-e and 50-i.

**CONCLUSION**

To conclude, the motion to dismiss (Dkt. No. 11) by the Village of Menands is granted to the extent that all state law claims (Counts 6 through 15) against the Village are dismissed for

plaintiff's failure to plead that he served a notice of claim pursuant to New York General Municipal Law §§ 50-e and 50-i, and the motion is otherwise denied.

The motion to dismiss (Dkt. No. 13) by the remaining defendants is granted in part and denied in part as follows:

- All claims under 42 U.S.C. § 1983 against Mayor Meg Grenier, Chief Michael E. O'Brien, Sgt. Frank Lacosse, and Officers Ed Barnes, Michael D'Ambro, and Aaron St. Gelais in their official capacities are dismissed as duplicative.

- All claims under Massachusetts law are dismissed.

- All claims against Hon. Robert A. Becher are dismissed with prejudice.

- All state law claims against Mayor Meg Grenier are dismissed without prejudice for plaintiff's failure to plead service of a notice of claim pursuant to New York General Municipal Law §§ 50-e and 50-i; and dismissal is denied as to the claims against her under 42 U.S.C. § 1983.

- All state law claims against Chief Michael O'Brien are dismissed without prejudice for plaintiff's failure to plead service of a notice of claim pursuant to New York General Municipal Law §§ 50-e and 50-i; and dismissal is denied as to the claims against him under 42 U.S.C. § 1983.

- Dismissal is denied as to the following 42 U.S.C. § 1983 claims against Sgt. Lacosse and Officers Barnes, D'Ambro, and St. Gelais: intentional arrest and confinement of plaintiff without his consent and without justification, use of excessive force, and the initiation and pursuit of criminal prosecution without probable cause (Counts 1 and 2); causing plaintiff to be subjected to unreasonable strip search at the county jail (Count 3); section 1983 conspiracy (Counts 1 and 4); and failure to intervene in the misconduct of other officers (Count 5).

- Any claim for conspiracy under 42 U.S.C. § 1985 is dismissed without prejudice.

- Dismissal is denied as to the following New York State law claims against Sgt. Lacosse and Officers Barnes, D'Ambro, and St. Gelais on the following state law claims, which are construed to include the allegation that the underlying torts were committed as part of a conspiracy: malicious prosecution (Count 6), abuse of process (Count 7), false arrest and imprisonment (Count 9), assault (Count 10), battery (Count 11), and intentional infliction of emotional distress (Count 13), insofar as these claims are found to allege conduct not subject to the notice of claim requirement.

- Counts 8 and 12 are dismissed.

- All New York State law claims in Counts 14 and 15 are dismissed without prejudice for failure to plead service of a notice of claim, and all 42 U.S.C. § 1983 claims in Counts 14 and 15 are dismissed with prejudice.

Accordingly, the case will proceed on the following 42 U.S.C. § 1983 claims against the Village of Menands, Chief Michael O'Brien, Mayor Meg Grenier, Sgt. Lacosse, and Officers Barnes, D'Ambro, and St. Gelais: intentional arrest and confinement of plaintiff without his consent and without justification, use of excessive force, and the initiation and pursuit of criminal prosecution without probable cause (Counts 1 and 2); causing plaintiff to be subjected to unreasonable strip search at the county jail (Count 3); section 1983 conspiracy (Counts 1 and 4); and failure to intervene in the misconduct of other officers (Count 5); and on the following New York State claims against Sgt. Lacosse and Officers Barnes, D'Ambro, and St. Gelais, which are construed to include the allegation that the underlying torts were committed as part of a conspiracy: malicious prosecution (Count 6), abuse of process (Count 7), false arrest and imprisonment (Count 9), assault (Count 10), battery (Count 11), and intentional infliction of emotional distress (Count 13); plaintiff may proceed on these state law claims only insofar as they are found to allege conduct not subject to the notice of claim requirement.

If plaintiff has in fact served a timely notice of claim, the Court will, upon motion, reconsider dismissal of those state law claims which are dismissed for failure to serve a timely notice of claim, *i.e.*, the state law claims against the Village, Mayor Grenier, and Chief O'Brien, as well as those state law claims against Sgt. Lacosse and Officers Barnes, D'Ambro, and St. Gelais that are based on conduct subject to the notice of claim requirement.  If plaintiff has served a timely notice of claim, he may move for reconsideration within 30 days; the motion shall be

accompanied by a notarized affidavit setting forth the facts surrounding the filing, and attaching a copy of the notice of claim.  If plaintiff does not move for reconsideration within 30 days of the date of this Memorandum-Decision and Order, he will be deemed to have waived and abandoned any contention that he served a timely notice of claim, and the case will proceed on the complaint as construed by this Memorandum-Decision and Order.  Repleading would be futile with respect to the section 1983 official capacity claims, the Massachusetts law claims, the claims against Judge Becher, Counts 8 and 12, and Counts 14 and 15 insofar as they are based on 42 U.S.C. § 1983; therefore, the Court does not grant leave to replead.

It is therefore

ORDERED that the motion to dismiss (Dkt. No. 11) by the Village of Menands is granted in part and denied in part in accordance with the Memorandum-Decision and Order herein; and it is further

ORDERED that the motion to dismiss (Dkt. No. 13) by all other defendants is granted in part and denied in part in accordance with the Memorandum-Decision and Order herein; and it is further

ORDERED that if in fact plaintiff has timely served a notice of claim, he may move for reconsideration within 30 days; the motion shall be accompanied by a notarized affidavit setting forth the facts surrounding the filing, and attaching a copy of the notice of claim; and it is further

ORDERED that **IF PLAINTIFF DOES NOT MOVE FOR RECONSIDERATION WITHIN 30 DAYS OF THE DATE OF THIS MEMORANDUM-DECISION AND ORDER, HE WILL BE DEEMED TO HAVE WAIVED AND ABANDONED ANY CONTENTION THAT HE SERVED A TIMELY NOTICE OF CLAIM, AND THE CASE**

**WILL PROCEED UPON THE COMPLAINT AS CONSTRUED BY THIS**

**MEMORANDUM-DECISION AND ORDER**; and it is further

     ORDERED that the Clerk of the Court is directed to serve copies of this Memorandum-

Decision and Order in accordance with the Local Rules of the Northern District of New York.

     IT IS SO ORDERED.

Date:   March 5, 2014
         Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge

-27-